## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# RECEIVED

OCT 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**George M. Lewis, M.D.**
George M. Lewis, M.D., Pro Se
7095 Hollywood Blvd.
# 1245
Hollywood, Ca. 90028
323-512-0198

*Plaintiff*

**CASE No. 1:07-CV-0939 (RMU)**

**Amended Motion in Opposition to Defendant's Second Motion to Dismiss Pursuant to Fed. Rules Civil Proc. Rule 56 (F)**

**vs.**

**Senator Evan Bayh, United States Senator from Indiana**
*Defendant*

_____/

**COMES NOW** George M. Lewis, M.D., appearing Pro Se, who asks this honorable court to her this complaint (Haines v. Kener 1972 401US 519, 30L Ed. 2d 652 92 S.Ct. 594), who submits this motion in opposition to defendant's [second] motion to dismiss Plaintiff's Amended Civil Complaint for damages pursuant to 28 U.S.C. 1983, 1985, and 1986.

1. All claims must be asserted either in responsive pleading or a motion. All defenses to a claim, whether asserted in a complaint, counter-claim, or third party complaint, must be asserted in the required responsive pleading. The only

alternative, exercisable at the option of the pleader, is to raise the...Rule 12(b) defenses by motion. [1]

2. Defendant Senator Evan Bayh's instant motion to dismiss (September 24, 2007) was quite different that defendant's first motion to dismiss (August 3, 2007) in that counsel assiduously avoided making any explicit mention of Fed. R.Civ Proc. Rule 12 (b) as the basis upon which his defense rests. [2]

3. However, defendant states that "Plaintiff's claims against Senator Bayh are subject to dismissal for failure to state a claim on the following grounds..." [3] Clearly defendant used the language, if not the attribution of his premise to Rule 12(b)(6) for failure to state a claim upon which relief may be granted to attack plaintiff's civil complaint.

4. In a motion to dismiss under Rule 12 (b)(6) for failure to state a claim upon which relief may be granted, such motions may be transformed into summary judgment motions if it is based on matters outside the pleadings and if the court considers those matters. [4] Normally, a motion to dismiss for failure to state a claim presumes the truth of the allegations of the complaint and considers only those allegations, matters or documents attached to and incorporated in the complaint, and matters of which the court may take judicial notice. [5][6]

---

[1] Fed. R. Civ Proc. 12(b)

[2] See Defendant Senator Evan Bayh's Motion to Dismiss P. 2, Para. 1

[3] See Defendant Senator Evan Bayh's Motion to Dismiss P. 3, Para 3, P. 4. Para 2, P. 5, Para 1.

[4] When a motion is made to dismiss for failure to state a claim on which relief may be granted, and matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as a motion for summary judgment and disposed of under Rule 56.See Moore's Federal Practice 12.51 (Matthew Bender, 3d. ed.)

[5] See Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017-1018 (5th Cir. 1996).

5. As the court considers matters outside the pleadings, plaintiff has had no opportunity conduct discovery to obtain depositions and affidavits, demonstrating the existence of a genuine issue of fact. [7] Moving to dismiss under Rule 12 (b)(6) without requiring defendant to establish undisputed facts deprives plaintiff of the opportunity to plead his case. Plaintiff asks the court to postpone a ruling on grounds that the continuance will enable Plaintiff, by discovery or other means, to rebut the Defendant's assertion of the absence of a genuine issue of fact. [8]

6. Without discovery, Plaintiff has a substantial handicap in any attack on the facts asserted in its initial and second motions to dismiss. [9] In this case, plaintiff is not seeking additional discovery, but discovery at all and summary judgment should not be ordinarily granted before discovery has been completed.

7. Defendant states that "plaintiff's allegations against Senator Bayh fail to sate a claim because (1) they are barred by the statute of limitations [10]; (2) no claim under 42 U.S.C. 1983 can be brought against Senator Bayh because he is a federal official alleged to have acted under federal law, and 1983 applies only to persons acting under color of law; (3) there is no *Bivens* remedy against government officials for actions in response to FOIA requests; (4) the Amended Complaint's

---

[6] See Defendant Senator Evan Bayh's Motion to Dismiss Exhibits 1, 2, 3, and 4.

[7] SEC v. Spence & Green, 612 F.2d at 900.

[8] Xerox Corp. v. Genmorra Corp., Fifth Cir 15 F3d 104; 888 F2d 345.

[9] Plaintiff has presented several facts that are not disputed. Plaintiff believes discovery on the issues related to the events described in his amended complaint of September 2005, and affidavits from the Indiana Co-conspirators will help establish the genuine facts concerning the conspiracy Plaintiff alleged. Furthermore, Plaintiff believes the state agencies like the Indiana Judicial Commission, and federal agencies like the F.B.I. have information that has not been presented. Affidavits and depositions from these sources, too, should be allowed.

[10] See Defendant Senator Evan Bayh's Motion to Dismiss P. 11, Para 2

allegations do not state a claim for a violation of plaintiff's constitutional rights by Senator Bayh; (5) plaintiff's allegations do not establish the elements of a claim under either 42 U.S.C. 1985 or 1986 for a conspiracy to violate plaintiff's rights by Senator Bayh; and (6) Senator Bayh is protected from suit by the doctrine of qualified immunity. [11]

## Statute of Limitations

8. Plaintiff asks this district court to toll the constitutional and intentional tort claim presented here based on 28 USCS 1658. (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues. [12]

9. Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action". [13] Plaintiff has presented particularized and detailed information about the circumstances and time he saw the connection between the threats to his life, the violations of his civil and constitutional rights, and the possible involvement of Senator Evan Bayh along with the other co-conspirators in Indiana. This was during July 2003. [14]

10. Plaintiff has set forth with great particularity his belief that Senator Bayh was involved in a civil conspiracy in July 2003 and went further to make those suspicions knows to the Senate Ethics Committee in August 2003. [15] This civil

---

[11] See Defendant Senator Evan Bayh's Motion to Dismiss P 12, Para 1.
[12] 28 USCS 1658
[13] Two Rivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).
[14] See Amended Complaint P. 15. Para 26
[15] See Defendant Senator Evan Bayh's Motion to Dismiss P 13, Para 2.

complaint, CV-07-0939 (RMU) was filed less than four years later in May 2007 and thus was within the statute of limitations established in 28 USCS 1658.

11. However, defendant raised the possibility that plaintiff may have known about Senator Bayh's involvement earlier. [16] On the other hand, Plaintiff asks the court to consider that it may have been later, depending upon the court's definition of "know". The Webster's Dictionary definition is: "To know, a verb, or knowledge (noun) applies to facts or ideas acquired by study, investigation, observation, or experience; the circumstance or condition of apprehending truth or fact through reasoning. But intuition may have made the leap to knowledge.

12. Plaintiff has alleged that some of the Indiana co-conspirators had been involved in Insider Trading and illegal transactions with penny stocks. Attorney Kenneth Kern used this insider trading method to enrich fellow democrat colleagues in Indianapolis, for whom he had performed the services of a stockbroker.[17] Plaintiff reported this concerns to the Security and Exchange Commission and witnessed immediate results in the almost immediate termination of that activity on the Internet and through other avenues.

13. In case alleging complex scheme to defraud plaintiffs into investing in risky and illiquid funds, plaintiffs' securities fraud claims were not subject to dismissal as untimely under 28 USCS 1658; fact that plaintiffs brought earlier suit against other parties did not establish they were on notice as to their claims against defendants.[18]

---

[16] See Defendant Senator Evan Bayh's Motion to Dismiss P 14, footnote, 2.
[17] See Amended Complaint P. 40 Para 97
[18] Zurich Capital Mkts., Inc. v. Coglianese 92004, ND Ill) 332 F Supp 2d 1087, dismd, in part (2004, ND Ill) CCH Fed Secur L Rep P92926

14. Plaintiff brings 28 USCS 1658 request for tolling the statute of limitations under the Continuous Tort Doctrine. To satisfy the continuing tort doctrine, a complaint must allege (1) a continuous and repetitious wrong, (2) with damages flowing from the act as a whole, rather than from each individual act, and (3) at lease one injurious act within the limitations period. [19]

15. Peace Corps trainee in Costa Rica was brought back to the District of Columbia for psychiatric evaluation and hospitalization against his will, but defendants claimed the statute of limitations had expired as it had been three years since plaintiff had left Costa Rica; since the litigation involved an alleged ongoing tort i.e., hospitalization, the cause of action did not accrue until the tortuous activity had ceased, 12-301(8). [20]

16. In Hobson v. Wilson, No. 76-1326 (D.D.C. Nov. 9 1979). Defendants renewed the one-year statute plea both before and after the verdicts against them. The case involved a complex fraudulent concealment in Hobson v. Wilson, [21] overwhelming and uncontradicted evidence that numerous agents of the FBI, members of the Metropolitan Police Department, and the District of Columbia itself deliberately constructed schemes to expose, disrupt, and otherwise neutralize the activities of anti-war and civil rights activitists in such a manner that the activitsts would never even suspect that any outsider was meddling in their lawful activities, much less that their constitutional rights were being

---

[19] Cook-Seals v. District of Columbia, 973 F. Sup, pp. 184 (D.D.C. 1997)

[20] Logiurato v. Action, 490 F. Supp. 84, 1980 U.S. Dist. Lexis 13108 (D.D.C. Feb. 27, 1980)

[21] Hobson v. Wilson, 737 F.2d 1, 1984 U.S. App Lexis 21739 9D.C.C. 1984)

violated, was sufficient to send the issue of the tolling of the statute of limitations due to fraudulent concealment to the jury.

17. Although, defendant continues to characterize plaintiff's complaint as "based on fanciful assertions", [22] "unsupported by the alleged facts" [23], plaintiff has presented a long and detailed history of particularized events that constitute an ongoing pattern of abuse, harassment, intimidation, threats, disruption, as well as attacks on his life, and his health. [24] This case is complex because the violations described throughout these proceedings involved a United States Senator, acting with intentional disregard for the law and malice. The events constituting the actions of the continuous tort described in the amended complaint, pages 53-57 are neither routine nor mundane, but egregious violations that would shock the sensibilities of the average citizen. Senator Bayh has enormous power as a sitting member of the United States Senate Select Committee on Intelligence, and the ability to carry out the acts of retaliation outlined in the Amended Complaint are in the realm of possibility for a person with his position, power, and influence. Plaintiff has made allegations about illegal wiretapping, [25] hacking into his computer, [26] and other violations of his Fourth Amendment rights, [27] with great particularity. **These alleged violations occurred in May, June, July, August, and September 2005.**

---

[22] See Defendant's Motion to Dismiss P. 2, Para 1
[23] See Defendant's Motion to Dismiss P. 11, Para 1
[24] See Amended Complaint Page 52-57
[25] See Amended Complaint, P 54, Para 3.
[26] See Amended Complaint, P 54, Para 3.
[27] See Amended Complaint, P 54, Para 3

18. Plaintiff asks this district court to deny defendant's motion to dismiss in the interest of Justice and permit an open and honest examination of the disputed areas of material facts contained in these numerous allegations of constitutional and civil rights abuses. Plaintiff has obtained an affidavit from a close friend and business associate who has personally experienced many of these violations first hand and has provided a sworn statement of facts attesting thereto. [28]

19. To the question, when did plaintiff have actual "knowledge" Senator Evan Bayh was linked to a conspiracy against his civil and constitutional rights? It was not until the Assistant U.S. Attorney Robert Lester described a Respondeat Superior relationship with respect to the charges of civil rights violations.[29] This was plaintiff's first exposure to the principle of separation of powers, justifying some degree of governmental immunity. Official misconduct may occur for a variety of reasons, including for example, unclear legal standards, miscommunication of agency policy, insufficient information, or time to make an informed decision, simple negligence, or will disobedience. In an employer/employee relationship, the employee's violations are fairly attributable to the employer whenever the employee acts within the scope of his employment. While the court may not wish to second guess policy decisions of the political branches of government, it may still have a duty to distinguish between that conduct that is policy related versus conduct that is purely ministerial in nature before deciding on the motion to dismiss.

---

[28] See Exhibit A
[29] See Amended Complaint

20. It was with these considerations that plaintiff recognized there were distinctions between the acts Senator Bayh may have undertaken in a ministerial (personal) capacity versus acts he performed that were part of fulfilling his responsibilities and capacity related to policy. [30] The court walks a fine line. Preservation of the legislative and executive branches' policymaking autonomy does not require the judiciary to abstain from evaluating conduct that does not involve an actual policy choice. [31] Justice may be served if the court required evidence of policy factors that were in fact considered by an official such as Senator Bayh when exercising his authority with regard to the F.O.I.A. and other matters related to this case.

21. One measure used to distinguish between his purely ministerial (personal) actions versus actions taken for policy (official) purposes has been the discretionary function test. The court may require evidence of policy factors that were in fact considered by an official authorized to act in this particular capacity, if the official lacked the authority to make policy, then his decision cannot be discretionary because he had no discretion to exercise. [32] This would especially hold true when the allegations of abuse of civil rights involved "various federal, state, and local officials and private persons and entities, and asserting that the defendants violated his constitutional rights based on wide ranging allegations of conspiracy," that were said to have transpired over a ten-year period. [33]

---

[30] United States v. S/A/ Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

[31] Peterson & Van Der Weide, supra, note 64, at 448, 473.

[32] See Goldman, supra note 75, at 859-60.

[33] See Defendants Motion to Dismiss, P. 2 Para 1.

22. At the very least, plaintiff has established and documented evidence spanning from 1998 until 2005 of harassment and abuse. [34] The exchange of emails with Inspector General Glen Fine of the Department of Justice about the illegal electronic monitoring is instructive. [35] Plaintiff has tried for more than a year and a half to obtain those reports from the DOJ. Although the Office of Professional Responsibility has acknowledged those investigative reports exists, plaintiff has not had an answer to any of his written queries for release through FOIA.

23. In addition, plaintiff has asked F.B.I. to investigate incidents of harassment, entrapment, abuse, violations of fourth amendment rights, and attempted murder. He has knowledge that reports have been generated in Indianapolis, Sacramento, and Victorville, California. His first request for these reports was 1998, nearly ten years ago, but he has only received response stating that his requests are being reviewed. For these and any other reasons the court may find compelling, in support of plaintiff's opposition to defendants' motion to dismiss, plaintiff asks the court to toll the statute of limitations pursuant to 28 USCS 1658 and deny defendant's motion.

### 42 U.S.C. 1983 Claims Against Senator Bayh Are Not Barred

24. Was there a legal federal policy that sanctioned illegal wiretaps, hacking personal computers, invasion of privacy, entrapment, intimidation, threats, and attempted murder in 2000, 2001, and 2002 through 2005? Was there a sufficiently close nexus between Senator Evan Bayh, Kern, Siedel, the Hamilton County Sheriff's Department, the Clerk, Indiana Supreme Court, and Atlantic Relocations to show

---

[34] See Amended Complaint Exhibits A-H.
[35] See Exhibit B

their actions [36] had been taken "under color of" state law, [which] subjects another to deprivation of any rights, privileges, or immunities secured by Federal Constitution. [37] Upon the evidence, if this were found to be the case, 42 U.S.C. 1983 is the applicable federal statute that provides private individuals with a civil cause of action for deprivation of their constitutional rights. [38]

25. There are many issues that can properly be raised here. However, <u>plaintiff brings this action under 42 U.S.C. 1983</u> for violation of his <u>Fourteenth Amendment</u> rights to property. These individuals conspired together and used a Noblesville **Superior Court Order** [39] for an eviction on July 9, 1998 to steal plaintiff's property. "Showing that actions were 'under color of state law', does not require that challenged action be pursuant to state statute; rather, question is whether there is sufficiently close nexus between sate and challenged action, or whether state has so far insinuated itself into position of interdependence that there is symbiotic relationship between actor and state such that challenged action can be fairly be attributed to state." [40] Kern, Siedel, Clerk, Indiana Supreme Court, the Deputy Sheriff of Hamilton County, and Atlantic Relocations Moving and Storage Company act with stealth, fraud, deceit, and malice to manipulate plaintiff in order to commit larceny, obstruction of justice, and conversion of his property.

---

[36] See Amended Complaint, Cause of Action 2, 3, 4, and 5.
[37] Monroe v. Pape (1961) 365 US 167, 5 L Ed 2d 492, 81 S. Ct 473.
[38] 42 U.S.C. 1983
[39] Cause No. 29D05-9806-SC-515, Superior Court No. 5 of Hamilton County, Exhibit C
[40] Johnson v. Orr (1986, CA3 NJ) 780 F2d 386, 121 BNA LRRM 2487, cert den (1986) 479 US 828, 93 L Ed 2d 56, 107 S Ct 107, 133 BNA LRRM 2744.

26. "Where federal officials act in complicity with state defendants to deprive person of constitutional rights, federal defendants may be liable in damages under 42 U.SC. 1983." [41] This civil complaint was not filed because "plaintiff was attempting to assert a state tort claim against Senator Bayh for blocking his FOIA request," [42] rather plaintiff brings this complaint because of the FOIA requests. Plaintiff alleged one document in the FOIA materials [43], linked Senator Evan Bayh to the other participants in this conspiracy and therefore made him answerable under 42 U.S.C. 1983. The issue of whether Senator Bayh did or did not block the release the FOIA documents is an important, but separate issue from the Senator's participation in a conspiracy that violated plaintiff's constitutional right to equal protection under the law and Fourteenth Amendment rights.

27. If, through the process of discovery, the court should find that Senator Bayh was indeed, the entity responsible for third-party congressional review of the two documents concerning Marion County and Hamilton County, Indiana, then the court may permit inquiry into the specific details with regard to his motives for doing so, i.e. was this review done in his official capacity, or was this in a ministerial (or personal) capacity, were policy decisions involved, did the Senator have authority to determine policy, etc. On the other hand, "private defendant acts

---

[41] Telegraph Sav. & Loan Assoc. v. Federal Savings & Loan Ins. Corp. (1981, ND Ill) 564 F Supp 862.
[42] See Defendant's Motion to Dismiss, P 15, footnote 12
[43] See Amended Complaint, Exhibit A.

under color of state laws for purposes of 42 U.S.C. 1983 when he is willful participant in joint action with state or its agents. [44]

28. According to the Supreme Court, "the specific historical catalyst for the Civil Rights Act of 1871 was the campaign of violence and deception...which as denying decent citizens their civil and political rights." [45] Therefore, by analogy the set of circumstances plaintiff presents fits the purposed protections for which the law was written to protect. The constitutional protection against loss of property and equal protection under the law.

29. Plaintiff understands the court recognizes that constitutional torts and civil rights act violations are properly brought here because it addresses intentional torts and such intentional torts are the most closely analogous to those wrongs that originally inspired the civil rights act.

30. This civil complaint does not purport to assert that "Section 1983... apply[ies] to federal officials acting under color of federal law". [46] These allegations are matters of fact [47] and plaintiff certainly cannot pretend that they did not happen or have not continued to happen up until the very recent past. Therefore, Plaintiff asks the court to uphold the basis of his 42 U.S.C. 1983 complaint against Senator Bayh as appropriate for a person acting under the color of state law to violate rights protected by the constitution.

---

[44] Malak b. Associated Physicians, Inc. (1986, CA7 Ind) 784 F 2d 277, 121 BNA LRRM 3300, 4 FR Serv 3d 504.
[45] Wilson, 105 S. Ct. at 1942, supra
[46] See Defendant's Motion to Dismiss, P. 16, Para 1
[47] Exhibits

31. Plaintiff asks for the courts' forbearance, in the interests of justice, by allowing discovery to move forward and not foreshorten the process before he has an opportunity to produce the facts showing the extent of Senator Bayh's participation in this conspiracy to violate plaintiff's rights. This is appropriate because the specific intent behind the creation of 42 U.S.C. 1983 was to immunize municipalities and the federal government form responsibility for many of the actions of officials within the scope of their employment.[48]

### No Bevins Remedy for Withholding FOIA Documents

32. The Bevins Remedy is inappropriate in this case because it does not apply. A Bivens action is a court-created tort action against federal employees as individuals for injuries caused by their constitutional violations. [49] Section 1983 primarily exposes individual state and local officials acting "under the color of state law" to liability for depriving a citizen of his/her federal constitutional or statutory rights. The complaint alleges that Senator Bayh reviewed and acted to withhold documents from plaintiff, but this was not the basis of the constitutional tort involved in this lawsuit. The tort **Senator Bayh is accused of having committed was the deprivation of plaintiff's rights guaranteed by the fourteenth amendment of the constitution** when he participated in a **conspiracy under the color of law** to steal plaintiff's property, then he **took part in a cover up of the wrongdoing for years afterwards.**

33. The question of whether or not Senator Bayh was the third party congressional reviewer of the two FOIA documents from Marion County and Hamilton County,

---

[48] Monell v. Department of Social Services, supra p. 2013
[49] See Bivens, 403 U.S. at 389.

Indiana is an important one, but the conduct which was alleged to have caused the injury to plaintiff was the result of the actions of Kern, Siedel, Clerk, Indiana Supreme Court, Hamilton County Deputy Sheriff's Department, and Atlantic Relocations Moving and Storage, aided by the actions of Senator Evan Bayh.

34. Plaintiff is not intending to re-litigate the issue regarding the release of documents that have been withheld by the Department of Treasury. [50] He has placed in exhibit a document that he believes connects Senator Evan Bayh to a conspiracy that has gone on for <u>ten years</u> to cover-up <u>the violation of his civil and constitutional rights </u>that took place on July 9, 1998 and thereafter. The breadth of the conspiracy is significant, involving, federal, state and local agencies and people, the time during which it has gone on is not inconsequential, and plaintiff's attempts to identify the parties and obtain information about the actions of Senator Evan Bayh and others has been inestimable. It amounts to, without any doubts, the intentional infliction of emotional harm.

35. Therefore, plaintiff asks the court to deny defendant's motion to dismiss because no Bevins remedy is available for federal officials who withhold FOIA documents. The single document that was released to plaintiff through FOIA, implicates a third party congressional reviewer. Plaintiff alleges this reviewer was part of the nexus that acted under the color of law to deprive plaintiff of his constitutional rights. Plaintiff alleges this party was Senator Evan Bayh. Plaintiff pleads under 28 USCS 1658, in light of the injustices that have taken place to this

---

[50] See Defendant's Motion to Dismiss P. 18, footnote 13

point in time, that the court considers the actions of Senator Bayh and others as
constituting fraudulent concealment.

### Failure to State a Claim Under 1983, Bivens, or 1986

36. Section 1983 provides a private individual with a civil cause of action against any
person who deprives the litigant of any constitutionally guaranteed right,
privilege, or immunity under color of law. Although Congress provided aggrieved
parties with a private cause of action for infringement of their constitutional
rights, Congress specifically omitted enacting a statute of limitations to govern
section 1983 cases.

37. Plaintiff has not had the opportunity to conduct sufficient discovery to obtain
affidavits that contain specific facts confirming the constitutional tort by
demonstrating the existence of a genuine issue of fact.[51] Plaintiff has presented
undisputed facts in support of this case. And, he does not wish to rely on "vague
and conclusory allegations. Defendant erred when he stated that Plaintiff can
prove no set of facts in support of his claim which would entitle him to relief." [52]
Defendant erred when he stated that plaintiff's allegations do not establish the
elements of a claim under either 42 U.S.C.S. 1985 OR 42 U.S.C.S 1986, or that
"it failed to provide any factual allegation linking Senator Bayh to the actions of
the state officials described in the amended complaint." [53]

38. Defendant erred when he asserted a claim for monetary damages from Defendant
for "personal actions" in violation of 42 U.S.C.S. 1983 is not applicable to federal

---

[51] SEC v. Spence & Green, 612 F.2d at 900.
[52] See Defendant's Motion to Dismiss, p.15, Para 2.
[53] See Defendant's Motion to Dismiss, P. 16, Para 2

officials. [54] Defendant erred when he stated, [such an] "allegation does not state a claim for the violations of plaintiff's constitutional rights." Or, that the complaint cannot be amended to correct any errors. [55] Defendant Senator Evan Bay erred in stating that plaintiff's allegations failed to allege the four elements of a conspiracy under 42 U.S.C.S. 1985 (3). [56]

39. Defendant Senator Evan Bayh erred in stating that plaintiff failed to state that plaintiff failed to allege that their was an agreement or meeting of the minds to violate [plaintiff's] civil rights because of his membership in a protected class." [57]

Defendant Senator Evan Bayh erred when he limited the significance of the

---

[54] See Defendant's Motion to Dismiss, p 16; Complaint which alleges that federal officials acted in conspiracy with state officials under color of state law may properly be filed under 42 USCS 1983. American Civil Liberties Union v. Chicago 91976, ND Ill) 431 F Supp 25 subsequent app (1977, CA 7 Ill) 558 F2d 1031, cert den (1977) 434 US 828, 54 L Ed 2d 87, 98 S Ct 108, subsequent cert den (1977, CA7 Ill) 565 F2d 975, 24 FR Serv 2d 547 9criticized in Hodgers-Durgin v De La Vina (1999, CA9 Ariz) 165 F3d 667, 99 CDOS 326, 99 Daily Journal DAR 403, 42 FR Serv 3d 837)

[55] See Defendant's Motion to Dismiss, p. 19; Where federal officials act in complicity with state defendants to deprive person of constitutional rights, federal defendants may be liable in damages under 42 USCS 1983. Telebraph Sav. & Loan Ins. Corp. (1981, ND Ill) 947 F Supp 1252.

[56] See Defendant's Motion to Dismiss, p 19; In order to prove existence of civil conspiracy, plaintiff is not required to provide direct evidence of agreement between conspirators, and circumstantial evidence may provide adequate proof of conspiracy; plaintiff seeking redress under 42 USCS 1985 for civil conspiracy need not prove that each participant in the conspiracy knew exact limits of illegal plan or identity of all participants therein, and express agreement among all conspirators is not necessary element of civil conspiracy. Hampton v. Hanrahan (1979) CA7 Ill) 600 F2d 600, rvd, in part on other grounds (1980) 446 US 754, 64 L Ed 2d 670, 100 S Ct 1987, reh den (1980) 448 US 913, 65 L Ed 2d 1176, 101 S Ct 33 and reh den (1980) 448 US 913, 65 L Ed 2f 1177, 101 S Ct 33.

[57] See Defendant's Motion to Dismiss, p. 16, A successful 42 U.S.C.S. 1983 claim requires a showing of the deprivation of a constitutional or federal statutory "right". This showing is required because 1983 creates a remedy when rights are violated but does not create any rights itself, Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct 2502, 65 L. Ed2d 555 (1980).

allegations to the fact "that Senator Bayh blocked production of the reports *not* because of any class based animus, but "in order to protect himself and his Indiana constituents." [58]

40. Defendant Senator Evan Bayh erred when he stated "plaintiff fails to allege sufficient facts to state a claim of conspiracy under 42 U.S.C.S. 1985". [59] A constitutional right upon which no Plaintiff asks for the postponement of a ruling on grounds that the continuance will enable Plaintiff, by discovery or other means, to rebut the Defendant's assertion of the absence of a genuine issue of fact. [60]

41. Without discovery, Plaintiff has a substantial handicap in any attack on the facts asserted in its initial and amended complaints. [61] In this case, plaintiff is not seeking additional discovery, but <u>discovery at all</u> and summary judgment should not be ordinarily granted before discovery has been completed.

---

[58] Recovery under 42 U.S.C.S. 1985 (3) can be had only if plaintiff suffered injury as result of act taken in furtherance of conspiracy; nevertheless, proof of agreement itself, as distinct from compensable injury, can derive from evidence of act done by conspirators, whether or not act caused injury that would be actionable under 1985 (3). Hobson v. Wilson (1982, DC Dist Col) 556 F Supp 1157, affd in part and revd in part on other grounds (1984, App DC) 237 US App DC 219, 737 F2d 142, 105 S Ct 1843 and (criticized in Atchinson v. District of Columbia (1996, App DC) 315 US App DC 318, 73 F3d 418, 33 FR Serv 3d 1033).

[59] See Defendant's Motion to Dismiss, p. 20; Specific intent need not be alleged in a suit under 42 USCS 1985 (3); facts pleaded must merely show an "invidiously discriminatory animus" behind the conspirators' action. Azar v. Conley (1972, CA6 Ohio) 456 F2d 1382, 15 FR Serv 2d 1179.

[60] Xerox Corp. v. Genmorra Corp., Fifth Cir 15 F3d 104; 888 F2d 345.

[61] Plaintiff has presented several facts that are not disputed. Plaintiff believes discovery on the issues related to the events described in his amended complaint of September 2005, and affidavits from the Indiana Co-conspirators will help establish the genuine facts concerning the conspiracy Plaintiff alleged. Furthermore, Plaintiff believe the state agencies like the Indiana Judicial Commission, and federal agencies like the F.B.I. have information that has not been presented. Affidavits and depositions from these sources, too, should be allowed.

42. Plaintiff can show Senator Bayh was a co-conspirator through disclosures through interrogatories and depositions. If given the opportunity, plaintiff can establish the Continuous Tort requirement to toll the statute of limitations to 4 years under 28 U.S.C.S. 1658. There should not be a rush to judgment where plaintiff has had no opportunity for discovery. Plaintiff asks the court to consider the accessibility to the evidence both parties must rely on in the prosecution of this case.

43. Plaintiff asks the court to give special attention to the basic principles of the factors of access to proof that must be seriously considered in ruling on a defendant's motion to dismiss, or summary judgment, particularly where the proof must come mainly from sources largely within the control of the defendant's and from the mouths of the alleged wrongdoers. [62]

### Qualified Immunity

44. Under the current system of the Official Policy requirement, individual agents can be held responsible for constitutional torts. The Federal Tort Claims Act created numerous exceptions, including the "discretionary function" exception, which precludes a suit against the United States "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the pat of a federal agency or employee of the Government, whether or not the discretion involved be abused." [63]

45. Plaintiff alleges that at some point during the past nine years Senator Bayh's conduct in the commission of these constitutional torts were acting "pursuant to

---

[62] Xerox Corp. v. Genmoora Corp., Fifth Cir., 15 F3d 104; 888 F2d 345
[63] U.S. 2680(a)(1994).

official "Federal" policy. Thus, plaintiff has only one door opened to this avenue for recovery against the defendant under 1983, [64]

46. This exemption requires analysis with a two-prong test showing government conduct involved the element of 1.) Judgment or choice, and 2.) The judgment or choice must be susceptible to policy analysis. [65]

47. Although policy based decisions may be immunized from review in tort actions,[66] under a respondeat superior defense, the court may still find that official's are liable for intentional or reckless misconduct [67] whether or not that officials' actions were undertaken within the scope of his employment. Because it is NOT that Senator Bayh deprived plaintiff of access to the FOIA documents that underlies this tort action, but the fact that he participated in a plan, under the color of state law [68] to deprive plaintiff of rights guaranteed by the constitution.

## Summary

48. In a motion to dismiss under Fed. R. Civ P 12b(6) "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [69] This motion may be converted to a Rule 56 motion for summary judgment without plaintiff having the opportunity to establish the factual basis of

---

[64] Monnell v. Depart. Of Social Services, 436 U.S. at 691
[65] U.S. v. Gaubert, 499 U.S. 315, 325 (1991)
[66] Lewis & Bhmoff, supra not 56, at 782.
[67] Hoffman, supra
[68] Exhibit
[69] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. dismiss or, in the alternative continue the matter until Plaintiff has an opportunity to obtain affidavits based on depositions that support the facts stated in his petition to the court. Ct 99, 101-102, 2 L.Ed2d 80, 84 (1957)

his allegations. Plaintiff asks the court's forbearance at this time, so that he might proceed.

49. Plaintiff asks the district court to deny defendant's motion to dismiss, with incomplete or non-existent discovery and either deny defendant's motion to dismiss or in the alternative grant plaintiff more time to conduct discovery.

Respectfully submitted,

George M. Lewis, M.D.
Pro Se

Dated:

10/05/07

**Proof of Service**

**Defendant**

Senator Evan Bayh
United States Senate
131 Hart Building
Washington, D.C.

George M. Lewis, M.D.
7135 Hollywood Blvd. PH 3-West
Los Angeles, California 90046

DATE: 10/05/07

# AFFIDAVIT

Dianne E. Curran
21616 – 9th Avenue S.E., #C-101
Bothell, Washington 98021
425.681.8511

I, Dianne E. Curran, have been asked to submit this affidavit under penalty of perjury.

Between August 2002 and September 2003 I assisted George M. Lewis, M.D. in his private neuropsychiatry practice in Fountain Valley, California in the role of volunteer patient care coordinator. Since I live in Washington State, most of my communication with Dr. Lewis and his patients was via phone, and less frequently, e-mail. Approximately once a month I came to Fountain Valley to take care of filing, additional paperwork and special projects on an as need basis. During this time I began having some very unusual and unnerving experiences primarily in California, but also in Washington State.

The following list is an overview of the experiences that directly impacted me:

- Upon arrival at local airports, I became increasingly curious why it seemed to take longer for my rental car to be ready for me than the customers ahead of me in line. Occasionally, the rental agent would indicate' there was some small item that was still being taken care of on my vehicle'. It happened often enough I began wondering if some type of detection device was being installed so my location activity could be monitored.
- Time was at a premium for me while in California, so I sometimes worked until evening, and when it was dark, I often noticed that a car appeared to be following me between the office and the hotel. I was unable to obtain a license number, but occasionally I would take a different route back to the hotel, or get off at an earlier exit than I needed, then re-enter the freeway, and it still appeared I was being followed.

- On several occasions I noticed I had a 'helicopter escort' [the type with the 'search light'] home from the office.
- I also noticed frequent helicopter activity that seemed uncannily targeted directly at me both day and night no matter where I was in the greater Los Angeles area.
- One evening at dusk I was leaving the Seal Beach area in my rental car. I was the first vehicle in line waiting for a red light at an intersection on the Pacific Coast Highway, and suddenly an extremely bright flash from inside the car directly across the street caused me to blink several times. I remember wondering at the time if someone might be attempting to photograph me, my license plate or any passenger(s) in the car.
- Throughout this time I had repeated challenges with my cell phone both at home in Washington State, in California, or wherever I was, despite numerous calls to my provider and several equipment changes too. In particular I experienced an extremely high number of dropped calls, as well as background static and an 'underwater whooshing' on the line.
- The challenges with my cell phone were the most frequent when I was talking with Dr. Lewis, however I also noticed them when talking with his patients, my own clients, and when making other professional and personal calls as well. I was (and still am) very concerned about the real possibility that both Dr. Lewis' phone lines and mine have been compromised by surveillance and the impact that has on each of us professionally and personally.
- Many times during this period my computer malfunctioned for no apparent reason despite adequate software and security systems. Without warning I lost all or part of a word processing document, had unexplainable formatting errors, experienced unusual e-mail errors and deletions, and sometimes I could no longer access a website that I had been able to previously access.

The following is a list of the experiences I observed that directly impacted George M. Lewis while I was on site during my routine monthly office visits to Fountain Valley, California, or that he mentioned to me during cell phone conversations between us during this same period of time, August 2002 – September 2003:

- Dr. Lewis experienced similar cell phone challenges to the ones I did, as well as challenges with land lines during this time period. However, the challenges he experienced were much more invasive as well as more extreme in both frequency and complexity.

2

- He also experienced a series of bizarre errors, malfunctions, deletions and omissions with his computer despite installation of adequate software and security measures.    Again his computer challenges were exacerbated exponentially compared to what I experienced.
- We were both concerned about the suspicious cell phone challenges we were both experiencing, and in the increases in particular during my monthly office visits to California, so we were extra cautious when we talked between ourselves 'locally' on our cell phones.
- On one occasion, just moments after a very brief and 'cryptic' call confirming a meeting location; Dr. Lewis was stopped by a local law enforcement officer and issued a ticket.  Because of the timing following our call, coincidence was not difficult to rule out in this situation. It was obvious to us that there must either be some type of electronic connection between our phones or our vehicles alerting the officer.
- Whenever I was in Dr. Lewis' Fountain Valley Office, the helicopter 'hovering' increased significantly.  One time we were walking across a parking lot and it both looked and felt like the helicopter was going to land right next to us.

I swear the above to be true and correct.


Respectfully Submitted,

Dianne E. Curran      October 5, 2007

*Dianne E. Curran*

**From:**    "George Lewis" <percipience@mindspring.com>
**To:**    <inspector.general@doj.gov>
**Sent:**    Friday, November 22, 2002 1:02 PM
**Subject:**    re: Plaintiff abuses in CV 02-3249
Department of Justice
Office of the Inspector General
Washington, D.C.

November 22, 2002

Dear Mr. Fine:

I never received an acknowledgment from your office about the two previous emails I sent on November 13 and 14, 2002. I will forward them to you via USPS to insure that you have hard copies as well. In addition, I wanted to inform you of the other incidents I alluded to, but did not specify earlier. I believe these incidents were all part of the government's multiple attempts to thwart my efforts to move the FOIA complaint forward. While my requests for documents had been handled in a timely manner by the Treasury Department, I began searching for an attorney in February 2002. I contacted the Los Angeles Bar Association referral line more than a half dozen times to find a lawyer. Each time, I spoke with a woman named Frenerly (sp. ?) who told me that there were no attorneys in Los Angeles familiar with FOIA law. I finally asked a friend to contact the lawyer referral line and she obtained the name of Richard Knickerbocker on her first call. He filed the FOIA complaint on April 19, 2002 (CV 02-3249). Mr. Knickerbocker and I had some communication problems, but the government made a timely response in July 2002. However, after that experience I fired him. Again, I called Frenerly at the Los Angeles Bar referral beginning in July and during the ensuing two months she made one referral to someone who didn't do FOIA appeals. Meanwhile, Mr. Zarin and Mr. Knickerbocker encouraged me to represent myself to meet Federal Court deadlines. I believe my access to legal representation through the Bar referral service was intentionally blocked by the government until I was able, with the help of a friend, to find an attorney to represent me.

Finally, I believe that my cellular telephone continues to be electronically monitored during a time that I am not under investigation for any crime and have been in compliance with Pretrial Services and the Court's orders. My original FOIA request (CV 02-3249) sought information about two other instances when I discovered that the government had placed wiretaps on my cellular telephone. This first occurred in April 2000 and I reported a second instance in December 2001, both times providing the numbers that computers had erroneously identified as my own. I think the government has gone too far in attempting to thwart my efforts to obtain the FOIA documents. After two years of experiencing dropped calls, interruptions, strange clicks, and hollow sounding echoes, I had a brief period of respite. Recently, calls that I have made have been dropped or interrupted by a distinct deadening pause about nine minutes into the conversation. This has been so noticeable that my clients and friends have routinely joked about big brother listening in. The discontinuity in the quality of sound is one thing, but the continued abrogation of my rights to privacy is illegal and a violation of my civil and constitutional rights. Thanks for your prompt attention. I would appreciate a reply.

George M. Lewis, M.D.
percipience@mindspring.com

**From:**    "George Lewis" <percipience@mindspring.com>
**To:**      <inspector.general@usdoj.gov>
**Sent:**    Friday, November 15, 2002 9:02 PM
**Subject:** Re: Abuse of Plaintiff in CV 02-3249

Dear Mr. Fine,

Please consider this a follow-up on my original request for an investigation and not a separate complaint. I wanted to provide you some background that might be useful in determining the truth.

1.  In July 2001, IRS was aware that I intended to pursue a FOIA request of 62-0103-0074, 62-0105-0034, 51-9912-0089, 55-0104-0002, in addition to one additional investigative report.
2.  In August 2001, I began searching for a company that processed credit card charges. I was originally directed to Cardservice International. After inquiring about their requirements, I learned that my credit history was too risky for them to grant me the services I wanted. I was transferred to BankCard USA because they dealt with customers that were considered credit risks. BankCard USA still required me to have a co-signer in order to qualify for their service, which started in October 2001.
3.  In September 2002, the co-signer, who also happened to be working for me, decided to leave my medical practice and I was informed by BankCard that I would have to reapply for a merchant account number. I submitted that application on September 25, 2002. Since I had a year's excellent history, I was told that I would not have to provide another co-signer. My contact was Mr. Shay (800-589-8200).
4.  In October 2002, Mr. Shay asked me to fill out another application with Cardservice International, saying that they often worked together. I submitted the application to Cardservice on October 14, 2002 and my contact was Ms Peggy Skelton (800-456-5989).
5.  In October 2002, I contacted Cardservices and was given a bit of their organizational history. A group of former BankCard USA employees saw an opportunity to offer services to credit-challenged clients that had been turned down by Cardservice International and spun off a new organization a half dozen years or so ago. I confirmed this later in a conversation with Ms. Skelton who also wondered why my application had gone to Cardservices when BankCard USA was set up to service with credit histories exactly like mine.
6.  On November 7, my application was approved by Cardservice International.

The best types of sabotage are the hardest to uncover and I am alleging that Mr. Zarin and others colluded to create financial hardship for me since the time I filed a complaint for access to government documents under the FOIA. The forty-four day delay in approving my a merchant account application had very disastrous financial consequences for me professionally and personally. I feel this is an indirect form of harassment. In addition, a number of other "unusual", "damaging" and "disruptive" events have happened to me since April 19, 2002 when I filed my FOIA request in the Los Angeles Federal District Court. I would be glad to discuss these issues at length, if you so wish.

Also, Special Agent Brian Goold informed me that Mr. Pewthers had no relationship at all with the government and was described as a "tax-activist". However, this does not explain the criminal conduct of the bank employees who encouraged me to open an illegal account. I am not claiming the Wells Fargo Bank did anything wrong in assessing the applicable fees and late charges. However, Assistant Vice President Bert Dodge and Personal Banker Candi McCoy were either working with and for the government, which Mr. Goold denies, or they are guilty of working with Mr. Pewthers in setting up illegal accounts. I am requesting that you investigate the circumstances surrounding the Justice Department's handling of these individuals in particular. Either they worked on behalf of the government in depriving me of my civil and constitutional rights, or they are criminals that should be prosecuted. If I am wrong, I am willing to be a witness for the government.

Please respond and let me know what disposition has been reached.



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

December 28, 2004

DR. GEORGE M. LEWIS
636 NORTH SPAULDING AVENUE
LOS ANGELES, CA 90036

Dear Dr. Lewis:

Your Freedom of Information-Privacy Acts (FOIPA) request was received from our **Indianapolis** Field Office, is being returned. Your letter did not contain sufficient information to conduct an accurate search of the central records system at FBI Headquarters. The following information is necessary:

Full Name: GEORGE M. Lewis

Current Address: 636 N. Spaulding Ave.

Date of Birth: 05-05-47     Place of Birth: Denver, Colorado

Daytime Telephone Number: 310-595-5610

You may also wish to provide prior addresses, employments, aliases, etc., which you believe may assist the FBI in locating the information you seek. GEORGE M. LEWIS, M.D
9015 Crest Road
Indianapolis, Indiana

Under penalty of perjury, I hereby declare that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, United States Code (U.S.C.), Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of Title 5, U.S.C., Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature_____     Date 10 January 2005

To initiate your FOIPA request, please return the original request letter with the requested information. Please note that mail addressed to the FBI is delayed several weeks due to increased security procedures now in place. You may fax your response directly to the RID Section at 202-324-3752.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

FAXED
1/12/05
MAILED
1/13/05



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

*January 21, 2005*

DR GEORGE M LEWIS
636 NORTH SPAULDING AVENUE
LOS ANGELES, CA 90036

Request No.: 1012125- 000
Subject: LEWIS, GEORGE M

Dear Dr. Lewis:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request. Your request was forwarded to FBI Headquarters from our Indianapolis Field Office.

☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

DR GEORGE M LEWIS                                          February 14, 2005
636 NORTH SPAULDING AVENUE
LOS ANGELES, CA 90036

Request No.: 1012985- 000
Subject: LEWIS, GEORGE M

Dear Dr. Lewis:

This is in response to your Freedom of Information-Privacy Acts (FOIPA) request noted above.

To promptly respond to our requests, we concentrate on identifying main files in the Central Records System at FBI Headquarters.  No records pertinent to your FOIPA request were located by a search of the automated and manual indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C.  20530, within sixty days from receipt of this letter.  The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal."  Please cite the FOIPA number assigned to your request so that it may be easily identified.

Should you desire a check of our field office files, you must write directly to the appropriate field office(s).

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division



**GEORGE M. LEWIS, M.D.**
590 Versailles Lane
Suisun, California 94585

December 3, 1998

Federal Bureau of Investigation
575 Pennsylvania Ave.
Attn: Civil Rights Supervisor
Indianapolis, Indiana 46205

Re: James Kingsolver and Steve Seidel

I failed to include some information that is important to the matter I presented to you last week. Included please find the copy of the original Corvette title that is in my possession. I also failed to mention that in May when I met with Mr. Seidel he was the one who first informed me that I could use the Corvette as collateral for a loan, after my own efforts to raise the money had failed. He knew that I had two more payments to make before the title would be cleared and suggested that I make both payments simultaneously in late May or early June in order to facilitate the likelihood of obtaining a loan from the Community Bank of Nobelsville. So, in spite of the fact that the last payment wasn't due until June 30, 1998, I went ahead and made them both in May, hoping it would help the loan approval process.

I talked with Mr. Kingsolver about this and told him the car title was on its way. I am sure he called me back and left messages over a period of several days before I understood what the process was all about. They were in a hurry to have it done quickly. But the title was complicated to recover because it had to be released by both previous lien holders who financed the car. But I was not the only one who called them to clarify the situation. Others contacted them as well. Mr. Seidel already had information that I was discovering  This made me feel uncomfortable. When I learned of their intentions to keep the car and evict me, I asked to have the title sent to me and that is how it came into my possession. Thanks for reviewing this new information.

In addition, I have two questions. If Mr. Seidel testified in court that 9815 Geist Road property had $ 214,000.00 in liens from the IRS on it at a trial in June and I had a land sales contract with a $ 27,000 00 in equity in the house, how can a mortgage be transferred from one back to another without all of that being cleared? And, if he was lying about the transfer of the mortgage, what happens to those liens and what happens to the $ 27,500.00 equity. Thanks for your patience.

Sincerely,

George M. Lewis, M.D.

b7C

196 - 0

(FBI - Indianapolis)

Date Received: _____
$ _____  _____ (name)
File Opened __X__ _____ (initials)
FBI Federal _____ Criminal Search _____ (initials)
Indexed / ____ (initials)
Data Uploaded _____ By: _____ (initials)
Supv. Approval _____ (initials)

196-0-1431

| STATE OF INDIANA | ) | IN THE SUPERIOR COURT NO. 5 |
|---|---|---|
| | ) SS: | |
| COUNTY OF HAMILTON | ) | OF HAMILTON COUNTY |

| STEPHEN E. SEIDEL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 29D05-9806-SC-515 |
| | ) | |
| GEORGE L. LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

### JUDGE'S CERTIFICATION

BE IT REMEMBERED, that the defendant, by counsel, presented and tendered to the undersigned, Wayne A. Sturtevant, Judge of said Hamilton Superior Court No. 5, State of Indiana, this Transcript of the Evidence containing the evidence of the hearing recorded on July 1, 1998, for settlement and signature and prayed that the same might be signed and made a part of the record in this cause; and now, having examined this Transcript of the Evidence containing the evidence on said date, the undersigned does now certify under my information and belief the same to be full, true, correct, and complete and that this Transcript of the Evidence correctly sets forth and contains all of the evidence given in the above-captioned cause on said date.

36

AND this Transcript of the Evidence of the hearing recorded on July 1, 1998, is now settled, approved, signed, and ordered to be and constitutes a part of the record of said cause, and the Clerk of said Court is hereby ordered to file the same as a part of the record in said above-entitled cause and the same is now filed with said Clerk and made a part of the record herein.

IN WITNESS WHEREOF, I have hereunto set my hand this _22nd_ day of July, 1998.

Wayne A. Sturtevant, Judge
Hamilton Superior Court No. 5